UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSCAR CHUNG and JAN CHUNG,<br><br>Plaintiffs,<br><br>v.<br><br>QBE INSURANCE CORPORATION, a Pennsylvania Corporation,<br><br>Defendant. | Case No.: 23-cv-0856-BEN (VET)<br><br>**ORDER** |

Now before the Court is Plaintiff Oscar Chung's and Plaintiff Jan Chung's motion for summary judgment (Dkt. 18) and Defendant QBE Insurance Corporation's motion for judgment on the pleadings (Dkt. 20). For the reasons discussed below, the Court grants Plaintiffs' motion for summary judgment on their breach of contract claim (Claim 2) and their request for a declaratory judgment (Claim 3). The Plaintiffs' motion for summary judgment as to their claim for breach of the implied covenant of good faith and fair dealing (Claim 1) is denied. Defendant's motion for judgment on the pleadings on the breach of contract claim (Claim 2) is denied. Defendant is granted summary judgment on Claim 1 pursuant to the genuine disputes doctrine and the associated request for punitive damages is dismissed. The only issue that remains is the amount of damages which Plaintiffs incurred due to Defendant's breach of contract.

## I. BACKGROUND

This is a case about a homeowner's insurance policy. The Plaintiffs own a home. They bought a homeowner's insurance policy from defendant QBE Insurance, policy number PHP2663552. The plaintiffs have a disabled adult child with special needs, Jonathan. To help with care for their son, the Plaintiffs hired a homecare assistant by the name of Maria Estela Medina. In California, workers like Medina who work within a residence may be considered employees of the homeowners who hire them. Homeowners like the Plaintiffs, in turn, may be considered employers of residential workers like Median. Homeowner-employers are required to carry insurance coverage for worker's compensation claims.

If an employee gets hurt while working, she may file a worker's compensation claim. That is what happened here. On February 17, 2022, Medina claimed to suffer an on-the-job injury while caring for Jonathan. Consequently, on March 17, 2022, Medina filed an Application for Adjudication of Claim before the Workers' Compensation Appeals Board, Case No. ADJ15923278 (the "Underlying Action"), against Plaintiffs for this alleged injury. Aware that their homeowner's insurance policy issued by QBE Insurance said it covered worker's compensation claims for residential employees, Plaintiffs timely notified QBE Insurance and tendered the defense of Medina's claim. QBE Insurance, in turn, accepted the claim and undertook a defense of the Plaintiffs, as expected.

Things changed when Medina filed another claim with the Worker's Compensation Appeals Board. She filed for compensation enhancement based on California Labor Code §132a. On July 25, 2022, Medina filed a Petition for Enhanced Benefits Pursuant to Labor Code § 132a before the Workers' Compensation Appeals Board, also under the Case No. ADJ15923278 ("132a Petition"). As before, Plaintiffs timely notified QBE Insurance and tendered the defense of Medina's second claim. This time, however, QBE Insurance did an about-face and refused to defend saying it was not covered by its policy of insurance.

Plaintiffs now bring three claims for relief. Plaintiffs allege a beach of the insurance contract and a breach of the implied covenant of good faith and fair dealing. Plaintiffs also seek a declaratory judgment clarifying that both of Medina's worker's compensation claims are covered by their homeowner's insurance policy.

## II.   APPLICABLE LAW

Plaintiffs move for summary judgment on each of their claims under FRCP Rule 56. QBE Insurance moves for judgment on the pleadings on the breach of contract claim under FRCP Rule 12(c).[1] The standards for considering these motions are well-known and are not questioned by the parties here. In applying these procedural standards, because plaintiffs' claims are based on state law, it is a federal court's task to apply state law as determined by the state's highest court. *Angel v. Bullington,* 330 U.S. 183, 191 (1947) ("The essence of diversity jurisdiction is that a federal court enforces State law and State policy."). Where the state's highest court has not decided a question, it is a federal court's task to predict what the state's highest court will decide. *Vazquez v. Jan-Pro Franchising Int'l, Inc.*, 939 F.3d 1045, 1048–49 (9th Cir. 2019) ("If a state's highest court has not spoken on an issue, 'then we must predict how the state's highest court would decide' the issue."). The prediction may be based on decisions made by the state's own courts of appeal or other persuasive authorities.

Under California law, the interpretation of contract language is a question of law. *Great Minds v. Office Depot, Inc.*, 945 F.3d 1106, 1110 (9th Cir. 2019). The California Supreme Court has not addressed the particular interpretative question here, but it has set out general principles to be used for interpreting contracts of insurance.[2] Where the

---

[1] Defendant also requests judicial notice be taken of five documents. RJN. Dkt 20-2. The motion is granted as to Exhibit A which is a certified copy of the insurance policy. The motion is denied as to the other documents including Exhibit D (an amicus brief) and Exhibits B and C (the pleadings in this case).

[2] Jurisdiction in this case is based upon diversity, and neither party disputes that the interpretation of the Policy is governed by California law. *See, e.g., Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (applying California

insurance law in diversity case). *Crane v. State Farm Fire & Cas. Co.*, 5 Cal. 3d 112, 115–16 (1971) lists some of the interpretative rules:

> "In analyzing the extent of the exclusion, our boundaries are the rules to be applied in the interpretation of insurance policies.  Any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer.  If semantically permissible, the contract will be given such construction as will fairly achieve its manifest object of securing indemnity to the insured for the losses to which the insurance relates.  Any reasonable doubt as to uncertain language will be resolved against the insurer whether that doubt relates to the peril insured against or other relevant matters.  The policy should be read as a layman would read it and not as it might be analyzed by an attorney or an insurance expert.  An exclusionary clause must be conspicuous, plain and clear and must be construed strictly against the insurer and liberally in favor of the insured. (Citations omitted.)

*AIU Ins. Co. v. Superior Ct.*, 51 Cal. 3d 807, 821–22 (1990), provides other rules:

> Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation.  Such intent is to be inferred, if possible, solely from the written provisions of the contract.  The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" controls judicial interpretation.  Thus, if the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning.
>
> If there is ambiguity, however, it is resolved by interpreting the ambiguous provisions in the sense the promisor (*i.e.*, the insurer) believed the promisee understood them at the time of formation.  If application of this rule does not eliminate the ambiguity, ambiguous language is construed against the party who caused the uncertainty to exist.  In the insurance context, we generally resolve ambiguities in favor of coverage. Similarly, we generally interpret the coverage clauses of insurance policies broadly, protecting the objectively reasonable expectations of the insured.  These rules stem from the fact that the insurer typically drafts policy language, leaving the insured little or no meaningful opportunity or ability to

insurance customer is not a sophisticated business customer, interpretations favor the insured. "The policy should be read as a layman would read it and not as it might be analyzed by an attorney or an insurance expert." *Crane v. State Farm Fire & Cas. Co.*, 5 Cal. 3d 112, 115–16 (1971). "[I]f the meaning a layperson would ascribe to contract language is not ambiguous, we apply that meaning." *AIU Ins. Co. v. Superior Ct.*, 51 Cal. 3d 807, 821–22 (1990).

### III.  DISCUSSION

The QBE Insurance policy specifically covers worker's compensation claims. In a two-page endorsement the policy provides:

**WORKER'S COMPENSATION AND EMPLOYERS'**
**LIABILITY INSURANCE ENDORSEMENT – CALIFORNIA**
**Residence Employees**

With respect to residence employees of the insured, and in consideration of an additional premium, the Company agrees:

**Insuring Agreements**

**Coverage I**
to pay promptly when due all compensation and other benefits required of the insured by *the workers' compensation law*, and

**Coverage II**
…..
**Conditions**
…..
**2. Additional Provisions Applicable to Coverage I**
The following provisions are applicable to Coverage I afforded under this endorsement:

---

bargain for modifications. Because the insurer writes the policy, it is held "responsible" for ambiguous policy language, which is therefore construed in favor of coverage. (Citations omitted.)

> (a) The Company shall be directly and primarily liable to any residence employee of the insured entitled to the benefits of the *Workers' Compensation Law* under this policy.

Exhibit 1, Dkt 18-7, at 63-64 (the policy of insurance) (emphasis in original) (italics added).

Reading this policy as a layman would read it, the policy is straightforward and on point. The policy covers worker's compensation claims made by residence employees. Under a plain reading this policy covers both of the worker's compensation claims filed by Medina. Under this reading, QBE Insurance clearly breached the insurance contract by refusing to defend or pay for Medina's second worker's compensation claim (*i.e.*, the §132a claim) against the Plaintiffs.

QBE Insurance disagrees. QBE Insurance spends 84 combined pages of briefing and 400 pages of exhibits to analyze the policy as an attorney would or an insurance expert would to arrive at a different conclusion, *i.e.*, that Medina's §132a worker's compensation claim is somehow not covered. To summarize the arguments, QBE Insurance says §132a claims are not ordinary worker's compensation claims. Instead, it asserts that §132a worker's compensation claims are intentional discrimination claims and presumes[3] from the beginning that the Chungs (its insureds) did in fact intentionally discriminate. QBE then maintains that its insurance policy does not insure against acts of intentional discrimination and further that state law does not allow insurance against intentional discrimination. Based on these arguments, QBE Insurance claims that its worker's compensation policy coverage does not cover worker's compensation claims brought under §132a even though there is nothing in the policy that mentions -- much less specifically excludes -- §132a claims. The arguments are not persuasive.

---

[3] Note the tone of QBE Insurance's briefing: "That the Chungs try to pass off to their homeowners insurer liability for their allegedly reprehensible behavior is astounding." QBE's Reply ISO Mot. for Judgment, Dkt 25 at 1.

QBE Insurance remonstrates that a §132a claim is not an ordinary worker's compensation claim so it is not covered by its insurance policy. "A Labor Code Section 132a Petition seeking penalties for unlawful termination is not in the same universe as a claim for workers compensation benefits for industrial injuries," says QBE Insurance. QBE's Reply ISO Mot. for Judgment, Dkt 25 at 1. Of course, both types of claims *are* worker's compensation claims arising out of an employer/employee relationship and presented to the California Worker's Compensation Appeals Board for resolution, which QBE Insurance acknowledges. QBE's Mem ISO Judgment, Dkt 20 at 16 ("Despite the fact that both types of claims are heard before the WCAB, they are, in fact, separate types of actions."). It is true that the two types of claims may be procedurally distinct. "[I]n workers' compensation practice, a petition for discrimination benefits under section 132a is procedurally separate and distinct from an application for ordinary benefits." *Morehouse v. Workers' Comp. Appeals Bd.,* 154 Cal. App. 3d 323, 331 (1984); *Sullivan v. Workers' Comp. Appeals Bd.*, 71 Cal. Comp. Cases 1065, 1066, fn. 3 (2006) (same). Nevertheless, they are both brought before the Worker's Compensation Appeals Board and are based on California's worker's compensation laws.

What is a §132a claim for enhanced benefits? California Labor Code §132a states,

> It is the declared policy of this state that there should not be discrimination against workers who are injured in the course and scope of their employment.
> (1)Any employer who discharges, or threatens to discharge, or in any manner discriminates against any employee because he or she has filed or made known his or her intention to file a claim for compensation with his or her employer or an application for adjudication, or because the employee has received a rating, award, or settlement, is guilty of a misdemeanor and the employee's compensation shall be increased by one-half, but in no event more than ten thousand dollars ($10,000), together with costs and expenses not in excess of two hundred fifty dollars ($250). Any such employee shall also be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer.…

Cal. Lab. Code §132a(1). A successful §132a claim increases the employee's worker's compensation award by one-half (up to an amount of $10,000) and may include back pay.

A §132a award falls comfortably within the QBE Insurance policy language which covers: "compensation and other benefits required of the insured by the workers' compensation law." QBE Insurance says that the §132a petition does not fall within its coverage because it is penal in nature and does not assess compensation or benefits. QBE's Mem ISO Judgment, Dkt 20 at 19. It may be penal in nature but the language of §132 uses the terms "employee's compensation" ("*employee's compensation* shall be increased by one-half") and "work benefits" ("reimbursement for lost wages and *work benefits*"). (Emphasis added.) Consequently, whether penal or not, a §132a claim seeks worker's compensation and benefits and is covered by the broad language of the insurance policy.

  QBE Insurance discounts the similarities and highlights the difference. QBE Insurance argues that the difference between the two types of claims is evident because part of the law is codified in Division 1 of the California Labor Code while another part is found in §3207 of Division 4 of the Labor Code. And QBE Insurance argues that "compensation" under one section is different from "back pay" under another section, and both are different from "benefits" under a third section. Whatever the differences may be between ordinary claims and §132a claims, the language of the QBE Insurance policy coverage is broad and encompasses all types of awards under the worker's compensation law. The policy does not limit its language to insuring against only ordinary or commonplace claims. Consequently, there is no reason why an insured policyholder (like the Chungs) would understand that some kinds of worker's compensation claims are not covered. *AIU Ins. Co.*, 51 Cal. 3d at 821–22 ("[W]e generally interpret the coverage clauses of insurance policies broadly, protecting the objectively reasonable expectations of the insured.").

  QBE Insurance next concedes that there is no specific exclusion in its policy of insurance for worker's compensation §132a claims, but it does not matter because "[t]here are literally hundreds of problems…and it would be a limitless task for

the insurer to specifically enumerate each of them as being excluded from coverage." QBE's Mem ISO Judgment, Dkt 20 at 18 (quoting *Glavinich v. Commonwealth Land Title Ins. Co.*, 163 Cal. App. 3d 263, 270 (1984)). *Glavinich* is not particularly helpful here because it involved a completely different type of insurance: title insurance. *Glavinich* makes this clear when the entire sentence is presented, "[t]here are literally hundreds of problems *that may affect real property, its condition or value* and it would be a limitless task for the insurer to specifically enumerate each of them as being excluded from coverage." *Id*. (emphasis added). It goes on to make the more general point that one first looks to the coverage defined by the insuring clause.

      QBE Insurance suggests that it is too difficult to write specific exclusions into a policy. But if there is anything more commonplace in insurance policies than exclusions, it is hard to imagine what it would be. After all, QBE was able to write an exclusion under the same worker's compensation and employers' liability endorsement for Labor Code §§4553/4557 conduct (conduct that the law explicitly prohibits insuring against), while failing to include any language in the policy limiting, in any way, coverage for §132a claims (which the law does not prohibit insuring against). So, that argument is not particularly persuasive.

      QBE Insurance next argues that even though there is no explicit exclusion in its policy for §132a worker's compensation claims, California law imposes an *implied* exclusionary clause in *every* insurance policy for willful wrongs of an insured, based on Insurance Code §533. QBE's Mem ISO Judgment, Dkt 20 at 16 (citing *Certain Underwriters at Lloyd's London v. ConAgra Grocery Prods. Co.*, 77 Cal. App. 5th 729, 739 (2022)). That could be a good argument but the caselaw does not support it.

      California Insurance Code §533 states, "An insurer is not liable for a loss caused by the willful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others." Cal. Ins. Code §533. This is a legal argument that an insurance lawyer might love, but a homeowner layman cannot be expected to understand. Plaintiffs argue that reading a §533 exclusion into the policy would render

part of the Worker's Compensation Endorsement illusory. Plaintiffs also argue that California courts have concluded that §533 does not apply to worker's compensation claims. For example, *Azevedo v. Able*, 264 Cal.App.2d 451, 458 (1968), explained, "[t]here is, then, a surface conflict between the compensation law's demand for secured compensation and the statutory policy against insurance for willful torts. The conflict disappears in the light of additional statutes." *Azevedo* continues, "Section 533 of the Insurance Code and section 1668 of the Civil Code *do not apply to workmen's compensation insurance coverage* and do not prohibit insurance against the employer's ordinary liability for disability compensation and medical expense, even when occasioned by his willful wrong." *Id*. (emphasis added). The *Azevedo* court is not alone. "All three statutes [§4553, §11661, §533] express the same public policy and would refer to the same conduct *except that section 533 does not apply to workers' compensation insurance*." *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal. App. 4th 715, 741 (1993), *reh'g denied and opinion modified* (Feb. 22, 1993) (emphasis added). QBE Insurance argues that the *Azevedo* decision is "inconsequential and distinguishable." QBE's Mem ISO Mot. Judgment, Dkt 20 at n.12; QSE's Oppo. to Plaintiffs' MSJ, Dkt. 21, at 14 (same). It does not, however, address the more recent *Shell Oil Co*. case. Even QBE Insurance's own agent agreed that precedent allows for insurance for a §132a claim. An email to Plaintiffs' attorney explaining QBE's decision to not defend the §132a claim said, "[t]here is generally a public-policy concern about insuring for willful, wrongful acts. Despite this, precedent allows insurance for 132a claims. . . . It depends, however, on the language of the insurance contract." Plaintiffs' Mot. for Summary Judgment, Exhibit 6, Dkt. 18-12 (email from Kimberly Poese to Joseph Dicks, Esq. dated Aug. 29, 2022).

If §533 means what QBE Insurances contends, one would expect to find a court decision interpreting insurance policy language as excluding workmen's compensation coverage for §132a claims, in view of its decision to deny coverage and decline to defend its insureds. But QBE Insurance has not identified such a case. Instead, the only case

that is on point supports the Plaintiffs' position: *Melton v. Industrial Indemnity Co.*, 103 Cal.Rptr.2d 222 (2001). QBE Insurance argues against considering that case because the opinion was depublished.

      A California appellate court addressed §132a insurance coverage in *Melton.* In *Melton*, an insurance policy with worker's compensation coverage used precisely the same policy language as is used in the QBE Insurance policy: *"to pay promptly when due all compensation and other benefits required of the insured by the workers' compensation law."* *Id*. at 236. In *Melton*, as in the QBE Insurance policy, there were no exclusions for §132a claims. *Id*. Faced with many of the same arguments QBE Insurance makes today, the *Melton* court was unpersuaded and by applying the state law rules of policy interpretation it concluded that §132a claims were covered by the policy language. For example, *Melton* explained, "[a]lthough section 132a does not provide the exclusive remedy for discrimination based on a work-related disability, the specific remedies it affords can only be recovered in a proceeding before the WCAB [Worker's Compensation Appeals Board]. It follows that section 132a is part of the general 'workers' compensation law' and anything it provides in the nature of 'compensation' or 'other benefits' therefore falls within the ambit of coverage A." *Id*. at 239 (citations omitted). Disposing with another argument, *Melton* said, "[the insurer] also contends a 132a award is really a penalty rather than a form of compensation. However, section 132a itself provides for increased 'compensation.' And a 132a award serves a remedial as well as a deterrent purpose." *Id.* at 240 (citations omitted). Finally, *Melton* dispensed with the argument that §533 precludes insurance coverage altogether, explaining inter alia, "[i]t is because some intentional workplace injuries are compensable under the workers' compensation system, and because an employer is required to 'secure the payment of compensation' by purchasing insurance against its liability for those injuries (§ 3700), that sections 533 of the Insurance Code and 1668 of the Civil Code do not apply to workers' compensation policies." *Id*. at 246.

Of course, *Melton* was not a published decision of the California Supreme Court and is not binding precedent on state trial courts. Nevertheless, federal courts sitting in diversity are not prohibited from citing, nor considering, a depublished state appellate decision for its persuasive reasoning. *Melton*'s reasoning is persuasive on the question of whether QBE Insurance's policy language covers a §132 worker's compensation claim like that of residential worker Medina, and based on *Melton*'s reasoning and the discussion above, this Court concludes QBE Insurance breached its insurance contract when it denied coverage and a defense of the Plaintiffs.

Because Plaintiffs are entitled to summary judgment on the breach of contract claim, granting Defendant's motion for judgment on the pleadings would be inconsistent. Therefore, Defendant's motion for judgment on the pleadings is denied. However, Plaintiffs' motion for summary judgment on the remaining claim for breach of the duty of good faith and fair dealing is a different story.

In order to establish a breach of the implied covenant of good faith and fair dealing by an insurer under California law, a plaintiff must show: (1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause. *Aram Logistics v. United States Liab. Ins. Co.*, No. 3:23cv1869-H-DEB, 2024 WL 390076, at *10 (S.D. Cal. Jan. 31, 2024) (citations omitted). In first-party insurance cases, as is the case here, the test of liability is whether the refusal to pay policy benefits was unreasonable. *Austero v. Nat'l Cas. Co.*, 84 Cal. App. 3d 1, 31 (1978), *overruled on other grounds by Egan v. Mutual of Omaha Ins. Co.*, 24 Cal. 3d 809 (1979). "While the reasonableness of an insurer's claims-handling conduct is ordinarily a question of fact, it becomes a question of law where the evidence is undisputed and only one reasonable inference can be drawn from the evidence." *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335, 346, *as modified on denial of reh'g* (July 30, 2001). "The mistaken or erroneous withholding of policy benefits, if reasonable or if based on a legitimate dispute as to the insurer's liability under

California law, does not expose the insurer to bad faith liability." *Id.* (citation omitted). "Without more, such a denial of benefits is merely a breach of contract." *Id.*

It is settled law in California that an insurer denying policy benefits due to the existence of a genuine dispute as to the existence of coverage liability is not liable in bad faith, even though it might be liable for breach of contract. *Id.* (citing *Fraley v. Allstate Ins. Co.*, 81 Cal.App.4th 1282, 1292 (2000)). In view of the absence of authority from the California Supreme Court and the dearth of precedential opinions from the California courts of appeal, there is little evidence of bad faith. Plaintiff's motion for summary judgment on its claim that QBE Insurance breached the implied duty of good faith and fair dealing is denied.[4] *Cf. Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 669 (9th Cir. 2003) ("Because the key to a bad faith claim is whether denial of a claim was reasonable, a bad faith claim should be dismissed on summary judgment if the defendant demonstrates that there was 'a genuine dispute as to coverage.'"). Moreover, according to what the Ninth Circuit refers to as 'the genuine dispute doctrine," a bad faith claim can be dismissed on summary judgment as a matter of California law. *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001) ("Under California law, a bad faith claim can be dismissed on summary judgment if the defendant can show that there was a genuine dispute as to coverage.") (citations omitted); *see also Case v. State Farm Mut. Auto. Ins. Co.*, 30 Cal. App. 5th 397, 414 (2018) (no triable issues on bad faith claim due to genuine dispute over worker's compensation payment).

Here, the bad faith claim arises from a genuine dispute as to policy coverage for the §132a claim. Because a genuine disputed existed, summary judgment is granted to QBE Insurance on the bad faith claim. Because summary judgment is granted as to the bad faith claim based on the genuine dispute doctrine, there is no basis for plaintiffs' punitive damages request. Therefore, summary judgment is also granted in favor of QBE

---

[4] QBE Insurance did not move for summary judgment specifically on the Plaintiff's claim for breach of the duty to use good faith and fair dealing.

Insurance on Plaintiffs' request for punitive damages. *Leung v. Unum Life Ins. Co. of Am.*, No. 22cv0767 W (JLB), 2023 WL 7351581, at *15 (S.D. Cal. Nov. 6, 2023) ("The genuine-dispute doctrine is an affirmative defense to a bad-faith claim. Under the doctrine, 'an insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith even though it might be liable for breach of contract.'") (granting summary judgment to insurer on bad faith claim and punitive damages based on the genuine dispute doctrine) (quoting *Wilson v. 21st Century Ins. Co.*, 42 Cal.4th 713, 723 (2007)); *Case*, 30 Cal. App. 5th at 417 ("In view of our conclusion regarding summary adjudication on the bad faith claim, summary adjudication was also proper with respect to Case's request for punitive damages."); *Jean Jacques Darmon, Inc. v. State Farm Gen. Ins. Co.*, No. LACV2105235JAKASX, 2023 WL 9019042, at *8 (C.D. Cal. Nov. 14, 2023) (same).

## IV. CONCLUSION

Therefore,

(1) Plaintiffs' motion for summary judgment under FRCP 56 is granted as to Claim 2 (the breach of contract claim); QBE Insurance's motion for judgment on the pleadings as to Claim 2 (the breach of contract claim) is denied.

(2) Plaintiffs are entitled to a judicial declaration (Claim 3) that the QBE Insurance homeowner's policy of insurance covers a residential employee's workman's compensation claims including claims brought pursuant to California Labor Code §132a; QBE Insurance's motion for judgment on the pleadings as to Claim 3 is denied.

(3) Plaintiffs' motion for summary judgment on Claim 1 (breach of the implied covenant of good faith and fair dealing is denied.

(4) QBE Insurance is entitled to summary judgment as to Claim 1 (breach of the implied covenant of good faith and fair dealing) and Plaintiffs' request for punitive damages.

The parties are reminded of the following direction from the Magistrate Judge: "Within two (2) business days of Judge Benitez's ruling on any dispositive motions regarding the coverage issues related to California Labor Code §132a and an underlying 132a Petition, the Parties shall file a Joint Status Report updating the Court as to whether a second Case Management Conference is warranted and if so, providing counsel's availability for a second Case Management Conference." *See* Order dated Sept. 28, 2023.

**IT IS SO ORDERED.**

Dated: June 21, 2024

**HON. ROGER T. BENITEZ**
United States District Judge